IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CATHERINE MCNAMARA, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL BANK FINANCIAL CORP., R. EUGENE TAYLOR, MARTHA M. BACHMAN, RICHARD M. DEMARTINI, PETER N. FOSS, WILLIAM A. HODGES, SCOTT B. KAUFFMAN, OSCAR A. KELLER III, MARC D. OKEN, ROBERT L. REID, and WILLIAM G. WARD, SR., <br><br> Defendants. | CIVIL ACTION NO. _____ <br><br> CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS |

Plaintiff Catherine McNamara ("Plaintiff"), by her attorneys, alleges upon information and belief, except for her own acts, which are alleged on knowledge, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff brings this class action on behalf of the public stockholders of Capital Bank Financial Corp. ("Capital Bank" or the "Company") against Capital Bank and the members of Capital Bank's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rules 14a-9, 17 C.F.R. 240.14a-9, 17 C.F.R. § 244.100, and 17 C.F.R. § 229.1015(b)(4), arising out of their attempt to sell the Company to First Horizon National Corporation ("First Horizon") (the "Proposed Transaction").

2. On May 4, 2017, First Horizon and the Company announced they had entered into an Agreement and Plan of Merger ("Merger Agreement"), by which First Horizon, through its

wholly owned subsidiary, Firestone Sub, Inc., ("Merger Sub"), will acquire all of the outstanding shares of Capital Bank in a cash and stock transaction in which Capital Bank stockholders will receive approximately 1.750 shares of First Horizon common stock and $7.90 in cash for each share of Capital Bank common stock, subject to proration and election allocation (the "Merger Consideration").

3. The Proposed Transaction has a total transaction value of approximately $2.2 billion as of May 3, 2017 and is expected to close in the fourth quarter of 2017.

4. On June 29, 2017, First Horizon and Capital Bank filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC. The Registration Statement, serving as a preliminary prospectus, recommends that Capital Bank stockholders vote in favor of the Proposed Transaction. Unfortunately, the Registration Statement is materially deficient and misleading in violation of federal securities laws because, *inter alia*, it fails to disclose material information regarding the Company's financial projections, which were prepared by Company management and relied upon by Sandler O'Neill & Partners LLC ("Sandler"), the Company's financial advisor, the financial analysis performed by Sandler to support its opinion on the fairness of the Proposed Transaction, and the background of the process taken by the Board leading up to the Proposed Transaction.

5. By unanimously approving the Proposed Transaction and authorizing the issuance of the Registration Statement, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Registration Statement was materially false and/or misleading. The Registration Statement is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

6.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to Capital Bank's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8.  Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.  Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Capital Bank maintains its headquarters in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES AND RELEVANT NON-PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Capital Bank.

11. Capital Bank is a corporation organized and existing under the laws of the State of Delaware. It maintains principal executive offices at 4725 Piedmont Row Drive, Suite 110, Charlotte, North Carolina, 28210. Capital Bank's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "CBF."

12. Defendant R. Eugene Taylor ("Taylor") has served as the Company's Chairman of the Board and Chief Executive Officer ("CEO") since the company's founding in 2009.

13. Defendant Martha M. Bachman ("Bachman") has been a director of the Company since October 2012.

14. Defendant Richard M. DeMartini ("DeMartini") has been a director of the Company since its founding in 2009.

15. Defendant Peter N. Foss ("Foss") has been a director of the Company since its founding in 2009.

16. Defendant William A. Hodges ("Hodges") has served as a director of the Company since its founding in 2009.

17. Defendant Scott B. Kauffman ("Kauffman") has served as a director of the Company since October 2016.

18. Defendant Oscar A. Keller III ("Keller") has served as a director of the Company since October 2012.

19. Defendant Marc D. Oken ("Oken") has served as a director of the Company since its founding in 2009.

4

20. Defendant Robert L. Reid ("Reid") has served as a director of the Company since October 2016.

21. Defendant William G. Ward, Sr. ("Ward") has served as a director of the Company since October 2012.

22. Defendants referenced in ¶¶ 12 through 21 are collectively referred to as Individual Defendants.

23. Relevant non-party First Horizon is a corporation organized and existing under the laws of Tennessee. First Horizon maintains its corporate headquarters at 165 Madison Avenue, Memphis, Tennessee, 38103.

24. Relevant non-party Merger Sub is a Delaware corporation and wholly owned subsidiary of First Horizon that was created for the purposes of effectuating the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action on behalf of all persons and/or entities that own Capital Bank common stock (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. The Registration Statement states that, as of June 26, 2017, there were 35,357,898 shares of common stock outstanding. All members of the Class may be identified from records maintained by Capital

Bank or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

27. Questions of law and fact are common to the Class, including (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Proxy in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if securities laws violations are not remedied before the vote on the Proposed Transaction; and (iii) whether the Class entitled is to injunctive relief as a result of Defendants' wrongful conduct.

28. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

29. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## FURTHER SUBSTANTIVE ALLEGATIONS

*Company Background*

31. Capital Bank was incorporated in Delaware in 2009 to serve as the bank holding company for Capital Bank Corporation (the "Bank"). Bank is a North Carolina state-chartered bank, wholly owned by Capital Bank. The Bank currently has 192 branches providing consumer and financial banking services, located throughout the Southeast, including locations in Florida, Tennessee, Virginia, North Carolina, and South Carolina.

***The Sale Process***

32. The Board received feedback from investment banks regarding possible strategic alternatives in fall and winter 2016-2017. After discussion, the Board directed the Nominating and Governance Committee of the board to seek out advisors that could assist in a strategic review and potential merger.

33. On February 3, 2017, the Nominating and Governance Committee met and concluded to recommend the engagement of Sandler and UBS Investment Bank ("UBS") to the Board. The Board met on February 6, 2017 and agreed to engage Sandler and UBS.

34. Following this meeting, Sandler and UBS contacted seven financial institutions, including First Horizon, regarding their interest in a potential merger with the Company. The seven institutions expressed such an interest.

35. Beginning on February 16, 2017, the Company's management and its financial advisors engaged in preliminary discussions with the seven institutions. Between February 14, 2017 and February 23, 2017, the Company entered into mutual confidentiality agreements with five of the intuitions. Following its entry into an agreement, one of the parties decided to pursue a different transaction and ceased discussions with the Company.

36. In early March, Sandler and UBS contacted the four remaining interested institutions to request the submission of non-binding preliminary indications of interest. The advisors also continued discussions with the two potentially interested parties that had not entered into confidentiality agreements.

37. On March 27, 2017, First Horizon submitted a written non-binding indication of interest proposing a merger with consideration based on a fixed exchange ratio between 1.694 and 1.727 shares of First Horizon common stock and cash consideration in the range of $7.70 to $7.85

per share of Company common stock. As of March 24, 2017, this indicated a value of between $38.50 and $39.25 per share. The proposal also provided that Defendant Taylor would join the First Horizon board and agree to render services for two years following a merger. First Horizon also requested a thirty-day exclusivity period.

38. During a meeting on March 30, 2017, the Board discussed the ongoing negotiations, and noted that one of the parties who had not entered into a confidentiality agreement, Party A, had submitted a preliminary oral indication of interest that did not include a range of prices. If Party A did not submit a more specific proposal, the Board authorized entering into the requested thirty-day exclusivity period with Firs Horizon.

39. Party A did not provide a more specific indication of interest despite its continued expression of interest in a transaction.

40. On April 4, 2017, First Horizon submitted an updated indication of interest, increasing the share exchange ratio to between 1.72 and 1.74 and the cash component range to $7.70 to $7.90. Based on the closing price of First Horizon stock on April 3, 2017, this indication of interest represented a value between $39.33 and $39.90 per share of Capital Bank common stock. First Horizon also provided that it would appoint an additional member of the Capital Bank Board to the board of the combined company.

41. First Horizon and the Company continued to negotiate the potential transaction, eventually increasing the share exchange ratio to 1.75, and affirming a cash component of $7.90 per share.

42. On May 1, 2017, First Horizon's attorneys provided a draft employment agreement between Defendant Taylor and First Horizon.

8
Case 3:17-cv-00439-FDW-DCK   Document 1   Filed 07/25/17   Page 8 of 19

43. Following due diligence and final negotiations, the Board met again on May 3, 2017.

44. After receiving Sandler's opinion that the merger consideration was financially fair, the Board approved the Proposed Transaction and authorized the execution of the Merger Agreement. UBS did not provide an opinion on the fairness of the Proposed Transaction.

45. Following the meeting, the parties executed the Merger Agreement and other transaction documents.

46. On May 4, 2017, First Horizon and Capital Bank issued a joint press release, reading in relevant part:

> MEMPHIS, Tenn. and CHARLOTTE, N.C., May 04, 2017 (GLOBE NEWSWIRE) -- First Horizon National Corp. (NYSE:FHN) and Capital Bank Financial Corp. (NASDAQ:CBF) have entered into a definitive agreement that will create the fourth largest regional bank in the Southeast. Under the agreement First Horizon, which has $30 billion in assets, will acquire Capital Bank, which has $10 billion in assets. First Horizon operates 170 branches across Tennessee and the Southeast, and Capital Bank operates 193 branches in the Carolinas, Tennessee, Florida and Virginia. The merger will accelerate First Horizon's strategic plan to enhance its presence in fast-growing markets in the Southeast.
>
> The combined organization will have $40 billion in assets, $32 billion in deposits, $27 billion in loans and more than 300 branches in Tennessee, North Carolina, South Carolina, Florida, Mississippi, Georgia, Texas and Virginia. First Horizon, which is headquartered in Memphis, Tenn., will retain its First Tennessee bank brand in Tennessee, where it has a 153-year history. Branches outside Tennessee will use the Capital Bank name.
>
> Under the agreement, each holder of Capital Bank common stock will be entitled to receive cash or stock with a value equivalent to 1.750 First Horizon shares and $7.90 in cash for each Capital Bank share held, subject to the election allocation and proration provisions of the merger agreement. In the aggregate, Capital Bank shareholders will receive a mix of approximately 80 percent stock and 20 percent cash. After closing, Capital Bank shareholders collectively will own approximately 29 percent of First Horizon's common shares and will have received approximately $411 million in cash. The total transaction value, at yesterday's First Horizon closing stock price, is $2.2 billion.

"This is an exciting time for First Horizon," said Bryan Jordan, chairman and CEO of First Horizon. "Together with the accomplished team at Capital Bank we will be able to leverage the strengths of both banks and capitalize on growth opportunities in attractive, high-growth Southeast markets and enhance our strong presence in our Tennessee markets. This partnership will help us more quickly achieve our critical bonefish financial targets. We look forward to working with the talented people of Capital Bank to combine the best of both of our organizations."

The agreement calls for two members of Capital Bank's board of directors to join the First Horizon board, including Gene Taylor, Capital Bank chairman and CEO, who will become vice chairman of First Horizon.

Taylor said, "The merger with First Horizon will allow us to sustain the success Capital Bank has achieved and create new opportunities for growth. The strategic fit between the two organizations is compelling, especially for our valued customers who will benefit from the enhanced balance sheet strength and broader array of products and services offered by a $40 billion Southeastern bank. I am looking forward to joining the board of First Horizon and am confident our combined company will reflect the values and talent of both organizations."

Both companies' long-standing commitment to serve their communities will remain vital to the combined organization's future. Since 1993 the First Tennessee Foundation has granted more than $65 million to nonprofit organizations. Together, in 2016 the combined companies provided $965 million in lending and investment activities to support low- to moderate-income communities. First Tennessee's Community Development Fund will be expanded by $15 million to support nonprofit and community development efforts in new markets.

The merger agreement has been approved by the boards of both companies. Closing is subject to customary approvals by regulators and shareholders of both companies. Pending those approvals, the transaction is expected to close in the fourth quarter.

### *The Materially Misleading and Incomplete Registration Statement*

47. Defendants have failed to provide stockholders with material information necessary for an informed vote on the Proposed Transaction. The Registration Statement, which recommends that the Company's stockholders vote in favor of the Proposed Transaction,

10

misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act.

***Misleading Statements and Omissions Regarding the Company's Financial Projections***

48. The Registration Statement fails to provide material information concerning the Company's financial projections.

49. The Registration Statement discloses that Company management provided analyst estimates of future earnings for Capital Bank and First Horizon to Sandler to support the advisor's fairness opinion.

50. However, the Registration Statement fails to disclose the following Company projections: (i) EPS estimates for Capital Bank for the years ending December 31, 2017 and December 31, 2018; (ii) estimated long-term annual earnings per share growth rate and dividend assumptions for Capital Bank, as provided by the senior management of Capital Bank; and (iii) the 2021 earning and December 31, 2021 tangible book value estimates provided to Sandler for use in its *Net Present Value Analysis* of Capital Bank. Without these measures, cherry-picking the disclosed projections materially misleads Capital Bank stockholders and renders Sandler's financial analyses meaningless.

***Material Omissions Concerning Sandler's Financial Analyses***

51. The Registration Statement describes Sandler's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Sandler's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Capital Bank's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Sandler's fairness opinion in determining how to cast their vote on the Proposed

Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Sandler's stockholders.

52. With respect to Sandler's *NPV Analysis* of Capital Bank, the Registration Statement fails to disclose: (i) the earnings estimates of Capital Bank used by Sandler; (ii) the estimated long-term annual EPS growth rate and dividend assumptions used by Sandler; (iii) the 2021 earnings and December 31, 2021 tangible book value estimate utilized to derive the terminal values; (iv) the inputs and assumptions underlying the discount rates ranging from 8.0% to 13.0%; and (v) the implied perpetuity growth rates corresponding to the assumed terminal multiples.

53. With respect to Sandler's *NPV Analysis* of First Horizon, the Registration Statement fails to disclose: (i) the earnings estimates of First Horizon; (ii) the estimated long-term annual EPS growth rate; (iii) the 2021 earnings and December 31, 2021 tangible book value estimates utilized to derive the terminal values; (iv) the inputs and assumptions underlying the discount rates ranging from 8.0% to 13.0%; and (v) the implied perpetuity growth rates corresponding to the assumed terminal multiples.

54. With respect to Sandler's *Pro Forma Merger Analysis* of the pro forma company, the Registration Statement omits: (i) the earnings estimates, long-term annual EPS growth rate and dividend assumptions used in the analysis for Capital Bank; (ii) the earnings estimates and estimated long-term annual EPS growth rate for First Horizon; (iii) the assumptions relating to purchase accounting adjustments, costs savings and transaction expenses; and (iii) the specific accretion and dilution figures resulting from this analysis to EPS and tangible book value, respectively, for the years ending December 31, 2018 through December 31, 2020.

55. With respect to Sandler's *Comparable Company Analysis* for Capital Bank and First Horizon the Registration Statement fails to disclose the individual multiples for each of the

selected public companies analyzed by Sandler, as well as the financial performance metrics for each selected company. Without such information, Capital Bank's stockholders are unable to determine how the multiples used in determining Capital Bank's value compare to the other companies. As a result, stockholders are unable to assess whether Sandler utilized unreasonably low multiples thereby rendering the implied share price ranges set forth in the analyses misleading.

56. With respect to Sandler's *Analysis of Selected Merger Transactions*, the Registration Statement fails to disclose the individual multiples for each of the selected transactions analyzed by Sandler, as well as any benchmarking analyses Sandler performed for Capital Bank in relation to the target companies. Without such information, Capital Bank's stockholders are unable to determine how the multiples used in determining Capital Bank's value compare to the other companies. As a result, stockholders are unable to assess whether Sandler utilized unreasonably low multiples thereby rendering the implied share price ranges set forth in the analyses misleading.

### *Potential Conflicts of Interest*

57. The Registration Statement omits material information regarding potential conflicts of interest faced by the Company's officers and directors as well as its second financial advisor, UBS.

58. Specifically, the Registration Statement omits material information regarding the potential conflicts of interest faced by UBS, including the fee payable to UBS in connection with the Proposed Transaction. The Registration Statement also omits any and all services performed for Capital Bank or First Horizon by UBS over the two years previous to the signing of the Merger Agreement, and the fees received for such services. The Registration Statement further omits material information concerning the engagement of UBS at the beginning of the process, including

13

whether UBS originally intended to provide a fairness opinion, whether UBS was asked to provide a fairness opinion, and whether UBS was unable to provide a fairness opinion.

59. These omissions materially mislead Capital Bank stockholders as to the as to the conflicts of interest faced by UBS in connection with the Proposed Transaction and render statements regarding the fairness of the transaction misleading.

60. Furthermore, the Registration Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Capital Bank's officers and directors, including who participated in all such communications.

61. Without this information, Capital Bank stockholders have no ability to understand whether Capital Bank management, directors, or advisors faced potential conflicts causing them to favor a transaction with First Horizon over other potential strategic alternatives.

### *Background of the Merger Process*

62. The Registration Statement omits or misstates material information regarding the process undertaken by the Capital Bank Board and management in the lead up to the Merger Agreement.

63. The Registration Statement discloses that the Company entered into mutual confidentiality agreements with five potential strategic partners, including First Horizon, between February 14, 2017 and February 23, 2017. No disclosure is made, however, as to whether these confidentiality agreements contained standstill provisions that remain in effect, or "don't-ask-don't-waive" standstill provisions that currently prevent the other four parties from making a superior bid for the Company and providing additional value to Company stockholders.

64. Furthermore, the Registration Statement discloses that Party A submitted an oral indication of interest in March 2017, yet omits any information as to the content of this indication of interest including, but not limited to, the merger consideration offered by Party A.

14

65. Without the material information described above, stockholders cannot make an informed decision whether or not to vote in favor of the Proposed Transaction, and have been harmed thereby.

66. Defendants' failure to provide Capital Bank's stockholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information. The material information described above that was omitted from the Proxy takes on actual significance in the minds of Capital Bank's stockholders in reaching their decision whether to vote in favor of the Proposed Transaction. Absent disclosure of this material information prior to the vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder**

67. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.

69. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material

fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

70. Specifically, the Registration Statement violates Section 14(a) and Rule 14a-9 because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Registration Statement is materially misleading and omitted material facts that are necessary to render the statements that are made non-misleading.

71. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth.

72. The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their right to cast a fully informed vote on the Proposed Transaction.

73. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

74. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

75. The Individual Defendants acted as controlling persons of Capital Bank within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Capital Bank, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the

content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

76. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

77. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Registration Statement.

78. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

79. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

80. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by

their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

81. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) declaring this action to be a class action and certifying Plaintiff as the Class representatives and her counsel as Class counsel;

(B) declaring that the Registration Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C) preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

(D) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff and the members of the Class rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(E) awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

(F) awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

(G) granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 24, 2017

Respectfully Submitted,

By: /s/Janet Ward Black
Janet Ward Black
NC Bar No. 12869
Nancy Meyers
NC Bar No. 23339
WARD BLACK LAW
208 West Wendover Avenue
Greensboro, North Carolina 27401
(336) 510-2104 Direct Dial
(336) 510-2181 Dedicated Facsimile
jwblack@wardblacklaw.com

-and-

LEVI & KORSINSKY, LLP
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
etripodi@zlk.com

*Attorneys for Plaintiff*